RECEIVED

SEP 30 2011

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SHAMEKA BANKS AND GREATER NEW ORLEANS FAIR HOUSING ACTION CENTER | CIVIL ACTION NO: 11-0551 |
| VERSUS | JUDGE DONALD E. WALTER |
| HOUSING AUTHORITY OF THE CITY OF BOSSIER CITY, LOUISIANA | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss for Failure to State a Claim upon which Relief May be Granted Pursuant to Federal Rule of Civil Procedure 12b(6) filed by the Defendant, Housing Authority of the City of Bossier City, Louisiana ("Bossier City Housing Authority"). [Doc. #7]. [1] For the reasons stated herein, Defendant's motion is hereby **DENIED**.

## BACKGROUND INFORMATION

Shameka Banks ("Ms. Banks"), individually and as parent to Timothy Banks and Jeremiah Banks, and the Greater New Orleans Fair Housing Action Center ("GNOFHAC"), filed suit against the Bossier City Housing Authority alleging discrimination on the basis of sex in connection with the rental of an apartment in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* [Doc. #1].

Ms. Banks and her children were living in Hall Park, a public housing development at 1313 Carver Street, Bossier City, Louisiana, owned and operated by Defendant. *Id.* Ms. Banks states that in November 2008 she submitted a request to have her kitchen sink repaired and Defendant

---

[1] Standing is a jurisdictional issue. Therefore, a motion challenging standing should be brought under Fed. R. Civ. P 12(b)(1). The Court will consider Defendant's motion under this standard.

responded by sending Danny Smith ("Smith"), the maintenance technician, to her apartment to make the necessary repairs. *Id.* Ms. Banks alleges that Smith touched her inappropriately while he was in her apartment. *Id.* Ms. Banks alleges that on March 27, 2009, a similar incident occurred with Smith after she submitted another maintenance request. *Id.*

Ms. Banks alleges that she reported both incidents in writing to the manager of Hall Park. *Id.* She also alleges that she requested to meet with Defendant's Executive Director to discuss the situation, but was denied. *Id.* Ms. Banks alleges she continued to be harassed by Smith after she submitted her written complaint. *Id.* Ms. Banks states that she filed a police report with the Bossier City Police Department after her second encounter with Smith. *Id.* She states that on March 31, 2009, a protective order was issued requiring Smith to keep his distance from her. *Id.* Ms. Banks states that she requested that Defendant change the locks on her doors because Smith had a key to her unit, but the request was denied. *Id.*

Ms. Banks alleges that in September 2010 she had yet another encounter with Smith, which resulted in his arrest for violating the protective order. She alleges that after Smith's arrest she renewed her request to Defendant to change the locks on her doors, but was again denied. *Id.* Ms. Banks claims that she had difficulties interacting with Defendant after she filed her complaint. *Id.*

On May 4, 2009, Ms. Banks filed a separate complaint with the U.S. Department of Housing and Urban Development alleging that she was a victim of sex discrimination. This complaint was referred to the Louisiana Department of Justice, which conducted an investigation and determined that Defendant was aware of Smith's conduct but failed to take action. *Id.* It is alleged that the Louisiana Department of Justice contacted GNOFHAC on behalf of Ms. Banks because it is the only

nonprofit organization in the State of Louisiana that provides free fair housing enforcement services. *Id.*

GNOFHAC alleges that it endeavored to assist Ms. Banks with her case because it considered the allegations in her case to be especially egregious, and because the Louisiana Department of Justice's investigation revealed that Defendant was aware that a member of its maintenance staff had sexually harassed multiple female tenants, yet failed to remedy the matter. *Id.* Thus, GNOFHAC believed that Defendant had engaged in a pattern and practice of discriminatory behavior. *Id.*

GNOFHAC made three separate trips to Bossier City regarding this matter. During these trips, GNOFHAC personnel interviewed Ms. Banks and other witnesses, canvassed the public housing complex, researched court records, issued requests for public records, and had a meeting with the Defendant's staff. GNOFHAC also developed an outreach flier on sexual harassment and distributed the flier to public housing residents throughout Bossier City. *Id.*

In dealing with this issue, GNOFHAC alleges in its Complaint that it had to divert scarce resources from other enforcement and outreach activities, including the following: (1) researching issues related to limited English proficiency discrimination, (2) filing a lawsuit suit against a landlord in New Orleans that discriminated on the basis of race, (3) investigating compliance with accessibility requirements in new multifamily housing developments, and (4) developing a fair housing workshop for children in the region. *Id.*

In response to Defendant's Motion to Dismiss, GNOFHAC provided the affidavit of its Executive Director, Mr. James Perry ("Perry"), which provides further details of GNOFHAC's efforts to assist Ms. Banks and to address the alleged discriminatory actions of the Defendant. [Doc.

#14-1].[2] He states that since August 2010, GNOFHAC has conducted education and outreach in Bossier City to counteract the effects of the Defendant's discrimination and inaction regarding the sexual harassment of tenants by its maintenance staff. *Id.*

GNOFHAC alleges that it expended the following resources: 85 hours of work by Kate Scott, GNOFHAC's Assistant Director, 31 hours of work by Hannah Adams, GNOFHAC's Outreach Coordinator, and 36 hours of work by Shontee Smothers, a GNOFHAC Homeownership specialist. *Id.* Perry also states that in September 2010 GNOFHAC spent two hours designing a web-page about sexual harassment in response to this matter. *Id.* Perry states that in October 2010 members of the GNOFHAC's enforcement and homeownership counseling departments traveled to Bossier City to conduct educational activities about sexual harassment and housing discrimination. *Id.* GNOFHAC states that in conjunction with this visit its staff distributed educational flyers, made door-to-door visits with tenants, and held an informational meeting. *Id.* GNOFHAC states that it also spent three hours researching the costs associated with targeted mailings regarding sexual harassment. *Id.*

In addition to the time and resources allegedly expended, GNOFHAC also alleges that it had to divert scarce resources away from other important activities, including (1) the annual GNOFHAC retreat, (2) outreach and counseling, (3) the redevelopment and expansion of the GNOFHAC website, (4) the development of a book for children, (5) planning for its annual summit, (6) filing a lawsuit against a landlord in New Orleans that discriminates on the basis of race, (7) researching

---

[2] GNOFHAC also states that Defendant's actions required GNOFHAC to retain outside counsel for 91 hours of legal work. Legal costs associated with advocacy are not an injury-in-fact and are insufficient to establish standing. *See Association of Retarded Citizens of Dallas, et al v. Dallas County Mental Health & Mental Retardation Center Board of Trustees, et al.*, 19 F.3d 241 (5th Cir. 1994).

whether there are trends in housing discrimination against individuals with limited English proficiency, and (8) recruiting, training, and the creation of a broad development strategy. *Id.*

## LAW AND ANALYSIS

The Defendant challenges whether GNOFHAC has standing to pursue a claim in this lawsuit. [Doc. #7-1]. "Standing is a jurisdictional requirement which remains open to review at all stages of litigation." *National Organization for Women, Inc. v Scheidler*, 510 U.S. 240, 255, 114 S.Ct. 798 (1994). Article III of the United States Constitution grants jurisdiction to the federal courts to hear only claims that meet the definition of "cases" or "controversies". *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (internal citation omitted). First, Article III standing requires an injury-in-fact. *Louisiana ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 304 (5th Cir. 2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992)). An injury-in-fact is both "concrete and particularized" and "actual or imminent", not conjectural or hypothetical. *Id.* Second, a causal connection must be established between the injury and the conduct complained of such that it is traceable to the challenged act of the defendant, not a third party. Third, it must be likely (not merely speculative) that the injury will be redressed in a favorable decision. *Id.*

At issue in this case is whether GNOFHAC can meet the injury-in-fact requirement. An organization such as GNOFHAC may establish an injury-in-fact by demonstrating "that it [] diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and perceptibly impaired the organization's ability to provide its activities – with the consequent drain on the organization's resources." *NAACP v. City of Kyle, Texas et al*, 626 F.3d 233, 238 (5th Cir. 2010) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114 (1982)) (internal quotations omitted).

However, not every diversion of resources to counteract a defendant's conduct is sufficient to establish an injury-in-fact. "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *ACORN v. LeBlanc*, 211 F.3d at 305. The Court in *ACORN* noted that the organization could not identify specific projects it had to put on hold while working on the case at issue, nor did it describe in detail how it had to redouble its efforts in the community to combat discrimination. *Id.*

At the pleading stage a plaintiff's general factual allegations may be sufficient to support a finding of an injury-in-fact because the Court presumes that general allegations embrace specific facts necessary to support the claim. *ACORN v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999). However, GNOFHAC went a step further and provided the affidavit of its Executive Director as evidence of its injury-in-fact.

As detailed *supra*, GNOFHAC's has set forth numerous instances where it diverted its resources to counteract the Defendant's conduct, thus causing a perceptible impairment of GNOFHAC's ability to provide certain services and activities. Particularly important in this instance is that GNOFHAC is an organization that relies on funding specifically designated for serving individuals in the Greater New Orleans area. However, when GNOFHAC learned of the alleged discrimination occurring in Bossier City it diverted significant resources to counter the Defendant's alleged conduct and to promote fair housing in Bossier City. GNOFHAC also specified that as a direct result of its involvement in this case it was forced to cut certain programs and, most important, it was unable to file a lawsuit against a landlord in New Orleans that discriminates on the basis of race. [Doc. #1]. This is not a mere redirection of resources, but a depletion resources necessary to prosecute a known case of racial discrimination.

GNOFHAC's Complaint and affidavit are more than sufficient for the Court to find standing at this point in the litigation. GNOFHAC has presented an affidavit setting forth a particularized injury that is traceable to the challenged conduct of Defendant, and which is likely to be redressed by a favorable decision. However, GNOFHAC will have to demonstrate at trial that it has suffered an injury-in-fact before it will be entitled to judicial relief. *Havens*, 455 U.S. at 379.

## CONCLUSION

The Court finds that GNOFHAC has provided sufficient evidence to establish standing at this stage of the litigation. Accordingly, Defendant's Motion to Dismiss [Doc. #7] is hereby **DENIED**.

DONALD E. WALTER
UNITED STATE DISTRICT JUDGE